## WITHERS v. JENKINS.

A trustee named in a deed executed in 1867 declined to accept and the land remained in the possession of the grantor, who received the rents and profits from 1868 to 1870, when the property reverted to the grantor; afterwards, judgment was rendered against him for such rents and profits, and against an execution thereon he claimed a homestead exemption. *Held,* that he received the rents and profits as acting trustee under the deed, and that therefore the obligation arose at the date of the deed, which being prior to the adoption of the constitution of 1868, the claim of homestead could not be allowed.

Before KERSHAW, J., Richland, October, 1882.

After stating the facts, which appear in the opinion of this court, the Circuit decree continued as follows:

The homestead act, as it now exists, declares the homestead "exempt to the head of every family residing in this state from attachment, levy, or sale on any mesne or final process issued from any court upon any judgment obtained upon any right of action arising subsequent to the ratification of the constitution of the

state of South Carolina." This is merely an amplification of the language of the constitution as amended in 1880, which declares that "the General Assembly shall enact such laws as will exempt from attachment and sale under any mesne or final process issued from any court to the head of any family residing in this state a homestead," &c. 17 *Stat.*, 320, 513.

Language could not be broader or more comprehensive than this in regard to judgments founded on the class of action specified. If the right of action arose subsequent to the constitution, whatever its nature, it cannot be enforced against the homestead. The question, then, (having regard only to the act,) is narrowed down to this, did the right of action arise subsequent to the ratification of the constitution? It will not be denied that it arose here after the death of Mary Jenkins, the elder, in August, 1868, and consequently subsequent to the ratification of the constitution.

But it is argued that the right of action arose under, and by virtue of, rights conferred by the deed of trust made by Samuel Jenkins in 1867; that that deed was a contract, whose full scope and effect is not to be impeded by the constitution of 1868, or any legislation thereunder, since no state may pass any law which impairs the obligation of a contract. If the action in which this judgment was rendered were founded upon the deed as the cause of action, there is little room to question the soundness of the propositions thus insisted upon. If, for instance, the deed contained covenants of warranty, and an action were brought directly upon the covenant, and a recovery had, the right of homestead could not, probably, be claimed against the judgment, though the breach, and therefore "the right of action," arose after the ratification of the constitution. This would be for the reason that the ground for the action would be the contract made before the constitution, whose obligation was sought to be enforced. The right to demand the performance of the covenants would have been vested by the contract, and could not be impaired by subsequent legislation.

The action in which the judgment here was rendered was originally brought by the plaintiff and his wife, setting forth the deed and demanding protection and enforcement of her rights in the land therein conveyed, which was then as now, in possession of

the defendant, who was receiving the rents and profits thereof. Jenkins denied the execution of the deed, and contested all the rights claimed thereunder. Plaintiff's wife died, and a supplemental complaint was served by leave of court on the part of the plaintiff, still insisting upon the deed and the supposed rights of the plaintiff thereunder, and upon the death of his child another supplemental complaint was served, wherein plaintiff still insisted upon the deed, and claimed his rights under it.

The issues of fact presented and decided were: (1) Was the deed duly executed and delivered by the defendant? (2) Was the marriage of plaintiff and his wife lawfully contracted, so that he had become entitled, in respect of her property, as her husband? The questions of law were: (1) What estate did Mary Withers take in the property under the deed? (2) What estate did her husband take after the death of his wife and child? In other words, what were the obligations of the defendant to the plaintiff under the deed? It will be seen, therefore, that this was an action upon the deed to set it up, and to have the court construe it, and to enforce the obligation thereof against the defendant. Under this action the court construed the deed, and rendered a judgment in favor of the plaintiff for rents and profits due him under the contract or deed thus construed.

The obligation of a contract consists in "the powers and efficacy of the law which applies to and enforces performance of the contract or the payment of an equivalent for non-performance." (*Per* Trimble, J., 12 *Wheat.*; 318.) The court decreed the payment of an equivalent for the non-performance of his contract by defendant, and he cannot set up a right of exemption created by legislation subsequent to the contract to defeat the obligation of it, here sought to be enforced.

It is therefore ordered and adjudged, that the rule be made absolute, and that the said sheriff, Samuel W. Rowan, proceed to enforce the execution aforesaid against the property of the defendant, according to its exigency, without regard to the claim of homestead therein, until the said property be exhausted, or satisfaction of plaintiff's judgment be made, and that he return said execution within thirty days from notice of this order, and failing

to do so, that he be attached as for a contempt for not obeying the order and process of the court.

From this decree defendant appealed, raising the question considered by this court.

*Mr. Preston L. Melton,* for appellant.

*Messrs. J. D. Pope* and *F. W. Fickling,* contra.

July 7, 1884.   The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.   On November 6, 1867, the defendant, appellant, executed a trust deed, by which he conveyed to one Francis Lopez, in trust, the tract of land levied on in this case by the sheriff of Richland county, and in reference to which the question of homestead raised in the appeal arises. This deed conveyed the property in trust for the use of Mary Jenkins, the wife of the appellant for life, and at her death for the sole and separate use of Mary Jenkins, his daughter, and the lawful heirs of her body.   Francis Lopez, the trustee named in the deed, declined the trust, and the property remained in the possession of the appellant.

In August, 1868, Mary Jenkins, the wife, died, leaving Mary Jenkins, the daughter, residing with her father, the appellant. In January, 1869, Mary Jenkins, the daughter, intermarried with Withers, the respondent.   In April, 1869, Withers and Mary, his wife, filed a bill against Lopez, the trustee, and the defendant, Samuel Jenkins, the latter of whom was in possession, claiming that Mary, upon the death of her mother, became entitled to the use and benefit of the land.   Before this cause came to a hearing Mary died, in November, 1869, leaving an infant son surviving her, who became entitled to the estate *per formam doni,* as the heir of the body of Mary.   This son died in March, 1870, leaving his father surviving.   The original bill was then revived by Withers, by supplemental complaint against the appellant, in which Withers claimed to be tenant by the curtesy. It was adjudged by this court on appeal that he was not entitled to the curtesy.   14 *S. C.,* 598.   The Circuit Court, however,

had allowed him rents and profits which had accrued during the life of his wife and son. It was also determined that the real estate had reverted to the appellant, Jenkins, the fee conditional estate having terminated by the death of his grandson.

Subsequently, the amount of the rents and profits were ascertained by report of a referee, and leave was granted Withers to enter up judgment and issue execution thereon with costs. Under this execution, the land was levied upon, when the defendant claimed the homestead; whereupon the sheriff declined to sell, and the proceeding below was a rule against the sheriff to show cause why he had not sold. The Circuit judge held that the cause of action upon which the judgment had been rendered arose upon the trust deed of Jenkins, which was executed before the adoption of the constitution in 1868, and therefore that Jenkins could not claim the benefit of the homestead provisions found in the constitution of 1868, or of the homestead acts subsequently passed. Was this error? is the question in the case.

It appears that at the time of the reference, when the amount of the rents and profits were ascertained, and also when the judgment thereon was entered, Jenkins was unmarried, having neither wife nor child, nor was he the head of a family. He has subsequently, however, and before the attempted enforcement of the execution herein, intermarried with his present wife, and now interposes his claim for the homestead.

The first point to be considered is, whether the judgment in question was based upon an obligation assumed by the appellant before the adoption of the constitution of 1868? If it was, of course there is an end of the case, under *Gunn* v. *Barry*, 15 *Wall.*, 610, and the decisions of our own state, as no homestead can be claimed upon a liability contracted previous to the creation of the homestead exemption provided for in the constitution of 1868. It has been urged very earnestly by appellant's counsel that defendant's liability did not arise under the trust deed, which it is admitted was executed previous to 1868, but that it arose out of a trespass in appellant by refusing to yield possession of the land, which trespass occurred in August, 1868, when his wife died, and continued to March, 1870, when the infant of his daughter died, and which, being after the adoption of the

24

constitution of 1868, his right of homestead attached as against this liability.

On the other hand, it is urged that Lopez, the trustee named in the trust deed, having declined the trust, and the appellant having continued to hold the property conveyed by him in the deed, held it as trustee, under the principle that a trust will not be allowed to fail for the want of a trustee, the party in possession with knowledge of the trust being regarded and held in equity as trustee *de facto*. This principle is a well-established principle in the administration of equity, and we can see no reason why it should not apply to the facts of this case. There is no doubt as to the facts: that the appellant did execute the trust deed; that Lopez was named therein as the trustee; that he declined to accept, and that the appellant being in possession, remained in possession, with full knowledge that Lopez had thus declined. He remained in possession during the life of his wife, during the life of his daughter, and her son, and still continues in possession, now holding it as his own by reversion.

During the time of this holding he was no trespasser, but he was rightfully in possession, and in law was holding for the benefit of the *cestui que trust*. He possibly might have abandoned the property without incurring any liability thereby, but this he did not do, and not having done so, he cannot evade the responsibility of his situation. True, he denied the validity of his deed, but that question has been adjudicated against him, and it reacts to the beginning of his possession. Suppose that Lopez had accepted the trust, and had taken possession in 1867 under the deed, could he have shielded his property by claim of homestead against a liability arising upon failure to account for the rents and profits received by him as such trustee since 1868?

The case of *De La Howe* v. *Harper*, 5 *S. C.*, 472, is conclusive of this question, we think. In that case it was held "that the homestead exemption under the constitution of 1868 cannot be allowed against a judgment for a *devastavit* committed by the defendant as administrator where the administration bond was given before the constitution was adopted; and it makes no difference that the *devastavit*, as well as the judgment, was after its adoption." The only difference between that case and this,

Rep.]                    April Term, 1884.

had Lopez accepted the trust, would be the fact that in *De La Howe* v. *Harper* the trustee had given bond for the faithful discharge of his trust, whereas in this the liability existed without bond. This fact, however, can make no difference as to the principle which should govern this liability. The principle is the same in each case. The relation of the parties, that of trustee and *cestui que trust*, is the basis of the liability in each case, and that begins at the time this relation is established.

Now, in our opinion, Jenkins, upon the refusal of Lopez to accept the trust, having continued to hold the property with a knowledge of all the facts, became in reality the trustee, standing in the shoes of Lopez, and subject to just such responsibility as he would have been subject to had he accepted. With these views, we see no error in the decree of the Circuit judge.

The other questions raised in the argument of the respondent are not involved in the case. No ruling was made upon them below, and inasmuch as the decree of the Circuit judge can be sustained upon the ground upon which he based it, these additional questions are not properly before us. They have not therefore been considered.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.